| | | |
|---|---|---|
| BARRY W. HAYNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08-CV-701 CAS |
| | ) | |
| BIS FRUCON ENGINEERING, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants BIS Frucon Engineering, Inc. and Fru-Con Companies Thrift Retirement Plan's motion for summary judgment. Plaintiff Barry W. Haynes filed an affidavit in opposition to the motion but did not file a memorandum in opposition, and Defendants have filed a reply. For the following reasons, the Court will grant the motion for summary judgment.

**Background**.

This removed action was originally filed by plaintiff Barry W. Haynes ("Plaintiff") in the Associate Circuit Court of St. Louis County, Missouri, against defendants BIS Frucon Engineering, Inc. and Fru-Con Companies Thrift Retirement Plan (collectively "Defendants"). Plaintiff was formerly employed by Fru-Con Engineering, Inc. from March 21, 1994 until January 26, 1999. In Count I of the Petition, Plaintiff alleges that $15,000 in vested benefits he was entitled to under the Fru-Con Companies Thrift Retirement Plan were unlawfully forfeited when his employment was terminated. In Count II, Plaintiff alleges that Defendant BIS Frucon Engineering terminated his employment with the intent to prevent him from reaching full 100% vesting in the Plan.

**Legal Standard**.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

With this standard in mind, the Court accepts the following facts as true for purposes of this motion for summary judgment.

**Facts**.[1]

1. Plaintiff was employed by Fru-Con Engineering beginning March 21, 1994. (First Amended Complaint for Damages ("Complaint"), ¶ 1 (Doc. 16)).

2. Plaintiff's Complaint states that he began participating in the Fru-Con Companies Thrift Retirement Plan on July 1, 1995. (Id., ¶ 4).

---

[1]Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

Plaintiff submitted a document titled "Affidavit of Plaintiff Barry W. Haynes" in response to Defendants' Statement of Uncontroverted Material Facts. As a threshold matter, the "Affidavit" is not signed by Plaintiff, but rather is signed by his attorney, Mr. Heinz, and states that Mr. Heinz is "authorized to sign by and on behalf of Barry W. Haynes." The Court is not aware that an affidavit can be submitted on a person's behalf signed by another individual. Nonetheless, because Defendants have not objected to the "Affidavit," the Court will consider it.

Plaintiff admits Defendants' Statements of Fact No. 1, 2, 9, 10, 13, 14, 16, 18, 19 and 20. For those Statements of Fact which Plaintiff did not admit, he failed to comply with the Court's Local Rules because he did not cite specific portions of the record supporting his denial, as required by Local Rule 4.01(E). Further, Plaintiff did not "set out specific facts showing a genuine issue for trial" as required by Federal Rule of Civil Procedure 56(e)(1). As a result, for purposes of this motion Plaintiff is deemed to have admitted all facts which were not specifically controverted. See Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999); see also Reasonover v. St. Louis County, Mo., 447 F.3d 569, 579 (8th Cir. 2006) (district court did not abuse its discretion in deeming facts set forth in moving party's summary judgment motion admitted under E.D. Mo. Local Rule 4.01(E) where no timely response was filed); Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E. D. Mo. Local Rule 4.01(E)). Because Plaintiff has not specifically controverted any of the Defendants' statements of fact, the Court adopts Defendants' Statement of Uncontroverted Material Facts in its entirety.

3.  Fru-Con Companies Retirement Thrift Plan ("the Plan") provided that a Participant's vested interest in his Employer Contributions Sub-Account shall be zero percent until the Participant has completed five years of Vesting Service at which time his vested interest in his Employer Contributions Sub-Account shall be 100 percent."  (Defs.' Ex. A, Plan; Defs.' Ex. B, Feb. 17, 1997 Amendment to Plan; Defs.' Ex. C, Weeks Affidavit).

4.  The Plan provided that an "employee shall be credited with years of Vesting Service equal to his period of continuous service."  (Defs.' Ex. A, Plan).

5.  Plaintiff's employment with Fru-Con Engineering, Inc. ended on January 26, 1999 as part of a reduction in force.  (Defs.' Ex. D, Employment Information; Defs.' Ex. C, Weeks Affidavit).

6.  Plaintiff's termination was prior to his achieving five years of employment.  (Defs.' Ex. D, Employment Information).  Plaintiff was employed with Fru-Con Engineering for approximately four years and ten months.

7.  Under the Plan, the sponsor had authority to construe its terms:

> The Sponsor, which shall be the administrator for the purposes of ERISA and the plan administrator for the purposes of the Code, shall be responsible for the administration of the Plan and, in addition to the powers and authorities expressly conferred upon it in the Plan, shall have all such powers and authorities as may be necessary to carry out the provisions of the Plan, including the power and authority to interpret and construe the provisions of the Plan, to make benefit determinations, and to resolve any disputes which arise under the Plan.

(Defs.' Ex. A, Plan).

8.  Plaintiff alleges that he was notified that the employer contributions for his account were being "forfeited" in approximately September of 2005.  (Complaint, ¶ 9).

9.  On December 6, 2005, Plaintiff sent a facsimile to Charles Weeks, Vice President of Fru-Con, asserting that he had been provided a Payout Request Form by "the Personal [sic] Manager with the adjusted Termination Date that he was to adjust in my files."  (Defs.' Ex. E, Dec. 6, 2005 Facsimile).

10.  The facsimile from Plaintiff includes one page of a multi-page Payout Request Form. (Defs.' Ex. E, Dec. 6, 2005 Facsimile).

11. The portion of the Payout Request Form does not include the name of the employee to whom it allegedly applied. (Defs.' Ex. E, December 6, 2005 Facsimile).

12. On the portion of the Payout Request Form, there is a handwritten notation of "100%" following the words "vesting percentage," but it is not discernible from the Form who wrote the notation "100%." (Defs.' Ex. E, Dec. 6, 2005 Facsimile).

13. The signature line for both the Participant and Plan Administrator are blank for the portion of the Payout Request Form provided by Plaintiff. (Defs.' Ex. E, Dec. 6, 2005 Facsimile).

14. On December 16, 2005, Mr. Weeks responded to Plaintiff's December 6, 2005 facsimile. (Defs.' Ex. F, Dec. 16, 2005 Weeks Correspondence; Defs.' Ex. C, Weeks Affidavit).

15. Mr. Weeks explained that Plaintiff was not vested in the employer contributions because his employment ended before five years. (Defs.' Ex. F, December 16, 2005 Weeks Correspondence).

16. Mr. Weeks stated that the portion of the Payout Request Form provided by Plaintiff in his December 6, 2005 facsimile was not in Fru-Con's records and noted that the Form was not signed by anyone. (Defs.' Ex. F, Dec. 16, 2005 Weeks Correspondence).

17. Mr. Weeks' December 16, 2005 correspondence stated that he had spoken with John Schembri, who was the Plan Administrator in 1999, and Mr. Schembri said he would not have placed incorrect information on a Plan document. (Defs.' Ex. F, Dec. 16, 2005 Weeks Correspondence).

18. On January 10, 2008, Plaintiff's counsel requested that Plaintiff be provided approximately $15,000.00 in "forfeited" employer contributions. (Defs.' Ex. G, Jan. 10, 2008 Heinz Correspondence).

19. On January 14, 2008, Mr. Weeks responded that Plaintiff was not entitled to the employer contributions because his employment ended after less than five years. (Defs.' Ex. H, Jan. 14, 2008 Weeks Correspondence; Defs.' Ex. C, Weeks Affidavit).

20. Mr. Weeks explained that the unvested employer contributions were forfeited five years after Plaintiff's termination in accordance with the Plan. (Defs.' Ex. H, Jan. 14, 2008 Weeks Correspondence).

**Discussion**.

## I. Plaintiff's Claim for Plan Benefits

Count I of the Complaint asserts a claim to recover benefits Plaintiff claims are due to him under the Plan, or to enforce his rights under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), ERISA Section 502. Under this section of ERISA, a participant or beneficiary can bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Defendants move for summary judgment on the basis that plaintiff is not entitled to any benefits under the Plan because he was not vested in the employer contributions he seeks.

The Plan provides that a "Participant's vested interest in his Employer Contributions Sub-Account shall be zero percent until the Participant has completed five years of Vesting Service at which time his vested interest in his Employer Contributions Sub-Account shall be 100 percent." (Defs.' Ex. A, Plan; Defs.' Ex. B, Feb. 17, 1997 Amendment to Plan).

The Plan provides that an "employee shall be credited with years of Vesting Service equal to his period of continuous service." (Defs.' Ex. A, Plan). Plaintiff's employment ended on January 26, 1999, which was prior to his achieving five years of employment. (Defs.' Ex. D, Employment Information).

Because he did not achieve five years of employment, Plaintiff is not entitled to the employer contributions he is seeking under the terms of the Plan. Plaintiff cannot recover because he has received all benefits to which he was entitled under the Plan. See Slice v. Sons of Norway, 34 F.3d 630, 632 n.5 (8th Cir. 1994) (no claim under 29 U.S.C. § 1132(a)(1)(B) when a plaintiff received all of the benefits he was entitled to under the terms of the plan at issue).

Under ERISA, "a 'vested right' is one that is 'nonforfeitable.'" Jefferson v. Vickers, Inc., 102 F.3d 960, 963 (8th Cir. 1996). Plaintiff did not have any nonforfeitable rights to the employer contributions under the Plan because he was zero percent vested at the time his employment ended. In Jefferson, the Eighth Circuit considered a similar factual situation in an action for plan benefits.

6

The plaintiff, Mr. Jefferson, was terminated from employment after four years and eight months, and his employer's 401(k) plan required employees to have five years of service with the company before vesting occurred. The Court stated:

> Vickers' 401(k) Plan required employees to have five years of service with the company before vesting. There is no dispute that at the time of Jefferson's termination, he had worked for Vickers for four years, eight months and fifteen days. Since Jefferson had not completed five years of service, he had not vested and therefore forfeited the employer contributions to his 401(k).

102 F.3d at 963. The Eighth Circuit affirmed summary judgment for the employer in <u>Jefferson</u>.

Similarly, there is no dispute that Plaintiff did not have five years of service at the time his employment was terminated. Because Plaintiff had not completed five years of service, he was not vested under the Plan and therefore forfeited the employer contributions to the retirement Plan.

Plaintiff asserts in the Complaint and in his "Affidavit" that Defendants are estopped from denying him the employer contribution because an unnamed employee, the Vice President of Personnel, promised Plaintiff at his termination that he would be treated as if he reached the five year requirement. Plaintiff asserts that he reasonably relied on the alleged assurance.

Plaintiff also alleges that he has a document showing that he was fully vested in the employer contributions. (Defs.' Ex. E, Dec. 6, 2005 Facsimile). The facsimile from Plaintiff, which purports to show that he was vested in the employer contribution, includes only one page of a multi-page Payout Request Form. (<u>Id.</u>). The single page of the Payout Request Form provided by Plaintiff does not include the name of the employee to whom it allegedly applied. (<u>Id.</u>). The provided page of the Payout Request Form bears a notation of "100%" in the space following the words "vesting percentage," but there is no way to tell from the Form who wrote the "100%." (Defs.' Ex. E). The signature line for both the Participant and Plan Administrator are blank on the provided page of the Payout Request Form. (<u>Id.</u>).[2]

---

[2]Although Plaintiff claims in his "Affidavit" that the original document contains his name, Plaintiff has not made the document part of the record in this case.

In addition, the single-page portion of the Payout Request Form provided by Plaintiff in his December 6, 2005 facsimile was not in Fru-Con's records. (Defs.' Ex. F, Dec. 16, 2005 Weeks Correspondence). Accordingly, there is no factual support for Plaintiff's assertion that either Defendant represented to Plaintiff that he was fully vested in the employer contributions.

Further, accepting as true Plaintiff's assertion regarding the alleged representation that he was vested in the employer contributions and the Payout Request Form, Plaintiff still cannot recover the claimed benefits. "It is well-settled that informal statements by an employer's representatives about benefits do not legally alter an ERISA plan, which is required by statute to be written." Pendleton v. Quiktrip Corp., 2008 WL 2129875 at *1, *7 (E.D. Mo. May 19, 2008) (citing Jensen v. SIPCO, Inc., 38 F.3d 945, 949 (8th Cir. 1994), cert. denied, 514 U.S. 1050 (1995)).

Eighth Circuit precedent is clear that such estoppel-type claims are not recognized. An ERISA plaintiff "may not use estoppel to recover money damages for reliance on an extra-contractual promise or representation." Houghton v. SIPCO, Inc., 38 F.3d 953, 958 (8th Cir. 1994) (citing Slice, 34 F.3d at 632). "In the context of an equitable estoppel claim, [the Eighth Circuit has] rejected the argument that oral or informal communications by an employer can modify the provisions of a written ERISA plan." Anderson v. Resolution Trust Corp., 66 F.3d 956, 960 (8th Cir. 1995) (citing Slice, 34 F.3d at 634-35). "ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise." Barker v. Ceridian Corp., 193 F.3d 976, 982 (8th Cir. 1999) (quoting Houghton, 38 F.3d at 958). A promise to Plaintiff that he would be considered 100% vested for the employer's retirement contribution would plainly be contrary to the Plan's terms.

With respect to the partial document which purports to show that Plaintiff was fully vested in the employer contributions, "there can be no reasonable reliance on informal documents in the face of unambiguous Plan terms." Nichols v. Alcatel USA, Inc., 532 F.3d 364, 375 (5th Cir. 2008) (internal punctuation and quoted case omitted). Even if the Eighth Circuit did recognize ERISA estoppel, Plaintiff could not prevail because he has not established any reasonable reliance. "In order to establish an ERISA-estoppel claim, a plaintiff must prove: (1) a material misrepresentation, (2)

reasonable and detrimental reliance on that representation, and (3) extraordinary circumstances." Nichols, 532 F.3d at 374. In this case, Plaintiff cannot establish any reliance, much less reasonable reliance and cannot establish any extraordinary circumstances. Plaintiff does not allege that he took any action in reliance on the alleged promise that he would be considered vested in the employer contributions. Plaintiff did not resign based upon the alleged promise or take any similar action. Fru-Con terminated Plaintiff's employment. The alleged promise, if made, was after Plaintiff's termination. See Complaint, ¶ 6.

Finally, even if ERISA estoppel were recognized, "ERISA-estoppel is not permitted if based upon purported oral modifications of plan terms." Nichols, 532 F.3d at 374 (quoted case omitted). The Plan unambiguously provides that employees are not vested in the employer contributions until completion of five years of Vesting Service: A "Participant's vested interest in his Employer Contributions Sub-Account shall be zero percent until the Participant has completed five years of Vesting Service at which time his vested interest in his Employer Contributions Sub-Account shall be 100 percent." (Defs.' Ex. A, Plan; Defs' Ex. B, Feb. 17, 1997 Amendment to Plan). Accordingly, the Plan's terms with respect to vesting were not subject to oral modification. See Houghton, 38 F.3d at 958; Straub v. Western Union Tel. Co., 851 F.2d 1262, 1265 (10th Cir. 1988) ("no liability exists under ERISA for purported oral modifications of the terms of an employee benefit plan.").

Accordingly, Plaintiff is not entitled to the employer contributions he is seeking under the terms of the Plan. Plaintiff has no claim because he received all benefits to which he was entitled under the Plan. See Slice, 34 F.3d at 632 n.5. For these reasons, Defendants' motion for summary judgment should be granted on Count I of Plaintiff's Complaint.

## II. Plaintiff's Claim for Interference with Benefits

Count II of Plaintiff's Complaint is brought under 29 U.S.C. § 1140, ERISA Section 510, and is pleaded in the alternative to Count I although it incorporates the allegations of Count I. Plaintiff alleges that Defendant BIS FruCon Engineering, Inc. "terminated Plaintiff with the intent to prevent him from attaining full vesting in the employer contributions towards the 'Plan' and in violation of their rights and responsibilities as Plan Sponsor and Administrator, all in violation of 29 USCS § 1140." Complaint, ¶ 15. Defendants move for summary judgment on the grounds that Count II is barred by the statute of limitations, Plaintiff cannot establish the requirements of an ERISA estoppel claim, the Plan is not a proper defendant for the intentional interference claim in Count II, and the relief plaintiff seeks in Count II is unavailable.

### A. Limitations Issue

Count II alleges that Plaintiff was terminated to prevent him from becoming fully vested and receiving the employer contribution benefits. "Since ERISA does not have its own statute of limitations, the court applies the most analogous state statute when determining whether a cause of action under the act is time-barred." Heideman v. PFL, Inc., 904 F.2d 1262, 1267 (8th Cir. 1990), cert. denied, 498 U.S. 1026 (1991).

Plaintiff's Count II is brought solely under 29 U.S.C. § 1140. See Complaint, ¶ 15. In Heideman, the Eighth Circuit considered what statute of limitations applied to a 29 U.S.C. § 1140 claim. 904 F.2d at 1268. Although the Court decided the case under Tennessee law because the claim arose there, it stated that if decided the issue under Missouri law, the five-year tort statute of limitations under Mo. Rev. Stat. § 516.120(4) would apply to 29 U.S.C. § 1140. Heideman, 904 F.2d at 1268 n.4. See also Pendleton, 2007 WL 607662 at *3 (holding that five-year statute of limitations applied to § 510 claim).

Plaintiff's employment ended on January 26, 1999. (Defs' Ex. D, Employment Information). Plaintiff filed this action on March 17, 2008, more than nine years after his termination. Accordingly, Plaintiff's Count II is time-barred.

B.  No Intent to Deny Benefits.

Assuming that Plaintiff's Count II was not time-barred, he cannot prevail on Count II because there is no evidence he was terminated in order to deny him benefits.  ERISA § 510, 29 U.S.C. § 1140, provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan."

For an ERISA interference claim, a burden-shifting analysis applies when there is no direct evidence of interference.  Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1035 (8th Cir. 2007).  Plaintiff has not alleged any direct evidence tying his termination to any eligibility for benefits.  Accordingly, the Court applies the burden-shifting analysis.  Libel, 482 F.3d at 1035 n.7.

For a prima facie case of ERISA interference, Plaintiff must establish a "causal connection between the likelihood of future benefits and an adverse employment action."  Conley v. Pitney Bowes, Inc., 978 F. Supp. at 892, 901 (E.D. Mo. 1997) (quoting Kinkead v. Southwestern Bell Tel. Co., 49 F.3d 454, 457 (8th Cir. 1995)).  In this case, there is no evidence supporting a link between Plaintiff's alleged potential entitlement to benefits and his termination.  Plaintiff has not identified any alleged link between future benefits and his termination.  In fact, Plaintiff alleges that he was promised the benefits when he was terminated.  See Complaint, ¶¶ 6, 10.  It is unclear how Plaintiff could have been terminated to prevent him from vesting in benefits which he alleges that he was promised at termination that he would receive regardless of the vesting requirement.

Without evidence that an employee's termination was motivated by a desire to prevent him from obtaining benefits, a plaintiff cannot establish a prima facie claim of ERISA interference. Kinkead, 49 F.3d at 457.  Because Plaintiff cannot establish a prima facie case of ERISA interference, Defendants' motion for summary judgment should be granted on Count II.

Assuming that Plaintiff could establish a prima facie case of ERISA interference, the employer must provide a legitimate, nondiscriminatory reason for its actions.  Jefferson, 102 F.3d at 964.

Plaintiff was terminated as part of a reduction in force. (Defs.' Ex. C, Weeks Affidavit). A reduction in force is a legitimate, nondiscriminatory rationale for termination. Jefferson, 102 F.3d at 964.

If an employer provides a legitimate, nondiscriminatory rationale for its action, the employee must then establish that the proffered reason is pretextual. Conley, 978 F. Supp. at 901. In this case, Plaintiff has not presented any evidence that the stated reasons for his termination were pretextual. A plaintiff has the ultimate burden to establish that his termination was motivated by considerations relating to his entitlement to benefits. Id. To prevail on an ERISA interference claim, an employee must show that the employer acted with the specific intent to deny benefits. Register v. Honeywell Fed. Mfg. & Techs., LLC., 397 F.3d 1130, 1137 (8th Cir. 2005). "This specific intent can be shown with circumstantial evidence, but must be more than mere conjecture." Jefferson, 102 F.3d at 964.

In the absence of evidence that interference with a plaintiff's ERISA protected rights was a motivating factor in his discharge, a plaintiff has not shown the required specific intent. Regel v. K-Mart Corp., 190 F.3d 876, 881 (8th Cir. 1999). "This specific intent is present where the employee's (future or present) entitlement to protected benefits is a motivating factor in the employer's decision." Koons v. Aventis Pharms., Inc., 367 F.3d 768, 777 (8th Cir. 2004). The Eighth Circuit has stated that in this context, "motivating factor" means a determining factor. Koons, 367 F.3d at 777. Accordingly, a plaintiff must show that he "would not have been terminated had he not been entitled to benefits." Koons, 367 F.3d at 777.

Plaintiff has produced no evidence that any ERISA rights were a motivating factor in his termination. Therefore, he cannot meet his ultimate burden of proof on his ERISA interference claim. See Conley, 978 F. Supp. at 901. There is no evidence that Defendants acted to deny Plaintiff his benefits under the Plan. Plaintiff was treated in accordance with the terms of the Plan. It is not ERISA interference for an employer to follow the terms of the plan:

> Because the plan must be administered according to its terms, plaintiff cannot complain because he is held to those terms . . . . ERISA § 510 affords protection from discrimination that interferes with the attainment of any right to which such participant may become entitled under the plan. Plaintiff does not have a right to treatment that is contrary to the terms of the plan[.]

<u>Jefferson</u>, 102 F.3d at 964 (quoting <u>McGath v. Auto-Body North Shore, Inc.</u>, 7 F.3d 665, 670 (7th Cir. 1993) (emphasis and brackets omitted).

Consequently, Plaintiff cannot prevail on his ERISA interference claim and Defendants' motion for summary judgment should be granted on Count II. As a result, the Court does not address Defendants' additional arguments that the Plan is not a proper defendant to the 29 U.S.C. § 1140 claim, and that the relief plaintiff seeks in Count II is unavailable.

**<u>Conclusion</u>**.

The Plan provided that an employee did not vest in employer contributions until five years of Vesting Service. Plaintiff's employment was terminated prior to the five years of service. Accordingly, he was not vested in the employer contributions. Plaintiff has no claim to the benefits he seeks under ERISA in Count I. In Count II, Plaintiff alleges that he was terminated in order to prevent him from vesting in the employer contributions. Plaintiff's Count II is time-barred. Further, there is no evidence that any potential future entitlement to benefits was a motivating factor in Plaintiff's termination. For these reasons, Defendants' motion for summary judgment should be granted in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants BIS Frucon Engineering, Inc. and Fru-Con Companies Thrift Retirement Plan's motion for summary judgment is **GRANTED**. [Doc. 28]

An appropriate judgment will accompany this memorandum and order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  14th  day of April, 2009.